**UNITED STATES of America, Appellee,**

v.

**Storie Lynn ORTA, Appellant.**

**No. 84-2530.**

United States Court of Appeals, Eighth Circuit.

Submitted Jan. 17, 1985.

Decided April 29, 1985.

*Martin*, 696 F.2d 49, 52 (6th Cir.), *cert. denied*, 460 U.S. 1073, 103 S.Ct. 1532, 75 L.Ed.2d 953

John R. Gibson, Circuit Judge, filed opinion concurring in part and dissenting, in which Ross and Fagg, Circuit Judges, joined.

Donald Wolff, St. Louis, Mo., for appellant.

Sam Rosenthal, Justice Dept., Washington, D.C., for appellee.

Before LAY, Chief Judge, and HEANEY, BRIGHT, ROSS, McMILLIAN, ARNOLD, JOHN R. GIBSON, FAGG and BOWMAN, Circuit Judges.

LAY, Chief Judge.

Storie Lynn Orta appeals from a district

(1983) (federal prosecutor's adverse inference argument held proper).

court[1] order accepting a magistrate's[2] recommendation that Orta be detained before trial pursuant to the pretrial detention provision of the Bail Reform Act of 1984. *See* Act of Oct. 12, 1984, Pub.L. No. 98–473, tit. II, ch. I, Sec. 203, 1984 U.S.Code Cong. & Ad.News (98 Stat.) 1976, 1978–79 (to be codified at 18 U.S.C. § 3142(e)).[3] This court en banc heard Orta's appeal on January 17, 1985, and entered an order on January 21, 1985 remanding to the district court its detention order. This opinion follows as a more complete exposition of the issues involved and the reasoning supporting our order of January 21.[4]

## A. Facts and Procedural History

On November 1, 1984, Storie Lynn Orta was arrested on a federal complaint charging her with conspiracy to possess and intent to distribute cocaine in violation of 21 U.S.C. §§ 841(a)(1), 846 (1982). Bail was set at $500,000. At the time of her arrest, Orta was approximately five months pregnant. The grand jury indictment charging Orta was filed on November 8, 1984. On the same day, Orta filed a motion to reduce bond and the United States moved for a pretrial detention hearing pursuant to 18 U.S.C. § 3142(f)(2).

The presiding magistrate held Orta's detention hearing on November 8, 1984. After considering the evidence, the magistrate concluded: "no condition of release for [the] defendant, under 18 U.S.C. § 3142(b), will reasonably assure [her] appearance * * * in court as required and will protect both the public at large and any cooperating individuals from retaliation or intimidation." *United States v. Orta,* No. 84–209Cr(1), slip op. at 6 (E.D.Mo. Nov. 13, 1984).[5]

The district court reviewed the magistrate's detention order and denied Orta's motion for rehearing and amendment.[6]

1. The Honorable John F. Nangle, Chief Judge, United States District Court for the Eastern District of Missouri.

2. The Honorable David D. Noce, United States Magistrate for the Eastern District of Missouri.

3. Provisions of the Bail Reform Act of 1984 are cited by future United States Code sections. Section 3142 of the Bail Reform Act of 1984 is included as an appendix to this opinion.

4. The January 21st order reads:
Before LAY, Chief Judge, and HEANEY, BRIGHT, ROSS, McMILLIAN, ARNOLD, John R. GIBSON, FAGG, and BOWMAN, Circuit Judges.
ORDER
On December 14, 1984, we remanded this case to the district court to determine whether Orta's activities could be adequately monitored so as to justify her release prior to trial. On remand, the district judge concluded that the United States Marshal's Service and the United States Probation Office could not "*guarantee* that defendant will not attempt to harm witnesses * * * or flee the jurisdiction * * *" and that anything "less than a *guarantee* * * * is neither adequate nor reasonable." Consequently, the district judge denied Orta's release.
We conclude that the district judge applied an incorrect legal standard in ordering Orta's detention pending trial. The Bail Reform Act of 1984 provides that "[i]f, after a hearing * * the judicial officer finds that no condition or combination of conditions *will reasonably assure* the appearance of the person as required and the safety of any other person and the community," the person shall be ordered detained prior to trial. 18 U.S.C. § 3142(e). The legal standard required by the Act is one of reasonable assurances, not absolute guarantees. Consequently, we must remand this action to the district judge for a further hearing and determination based on the appropriate legal standard.
A memorandum opinion addressing the issues upon appeal will follow.
LAY, Chief Judge, and HEANEY, BRIGHT, and McMILLIAN, Circuit Judges, concurring.
We agree that the district judge applied an incorrect legal standard and that this case should be remanded. However, we would direct the district judge to release Orta pending trial and to conduct a hearing to determine the conditions of Orta's release.

5. We note the magistrate appears to have applied incorrectly the pretrial release provisions in Orta's November 8 hearing. After finding the forms of release available under section 3142(b) will not meet the statutory safety and appearance concerns, the judicial officer must consider whether the more restrictive alternatives under section 3142(c) will assure community safety and the defendant's appearance before determining that detention is appropriate. *See infra* at 890.

6. *See* 18 U.S.C. § 3145(b).

The court held the "pre-trial provisions of the Bail Reform Act of 1984 were correctly applied in this case." *United States v. Orta*, No. 84–209Cr(1), slip op. at 2 (E.D.Mo. Nov. 21, 1984).[7]

Orta appealed the district court's denial of her motion to this court. On December 14, 1984, we entered an order remanding Orta's case to the district court and instructing the court:

> [To determine] [w]hether defendant's activities may be adequately monitored by the United States Marshals Service and/or by the federal probation office for the Eastern District of Missouri so that defendant is not likely to constitute any danger to the public including witnesses for the prosecution and so that her appearance in court may be assured.

*United States v. Orta*, No. 84–2530 (8th Cir. Dec. 14, 1984).

The district court directed the magistrate to conduct a second evidentiary hearing and to file a report and recommendation on the remanded issues. After the supplemental hearing, the magistrate determined the new evidence did not contradict the findings and conclusions in his original order, and recommended that Orta be denied bail.

Orta filed objections to the magistrate's report and requested a hearing before the district court. On December 28, 1984, the district court accepted the magistrate's recommendation and found that Orta's activi-

ties could not be monitored adequately to ensure compliance. The court reasoned that probation office or Marshal Service surveillance would not be:

> adequate or reasonable for the very reason that they cannot *guarantee* that defendant will not attempt to harm witnesses * * * or will not flee the jurisdiction * * * *Anything less than a guarantee* against such misconduct, especially where the record suggests that there is a *strong likelihood* of such misconduct, *is neither adequate nor reasonable.*

*United States v. Orta*, No. 84–209Cr(1), slip op. at 1–2 (E.D.Mo. Dec. 28, 1984) (emphasis added).

Orta appealed the district court's order. On January 21, 1985, this court held that the district court had erred in requiring a "guarantee" that Orta would not flee or compromise the community's safety. We remanded Orta's case to the district court for further hearing based on a legal standard requiring a *reasonable assurance* of Orta's appearance and lack of danger to others.

## B. Discussion

■ Orta argues on appeal that the district court's insistence on a "guarantee" she remain in the jurisdiction and pose no threat to the community is an erroneous interpretation of the pretrial detention provision of the Bail Reform Act of 1984.[8] We

---

**7.** The district court did not disagree with the magistrate's findings that Orta had once struck a woman in the head with a revolver, that several weapons and various quantities of cocaine and marijuana had been found in Orta and her husband's places of residence, that Orta had been carrying a loaded gun in her purse, and that in both the matter at issue and another incident involving Orta and her husband, witnesses had been threatened or had expressed fears of reprisal. The length of sentence Orta could receive if found guilty was considered significant in determining Orta's propensity for flight.

**8.** Orta also challenges the pretrial detention provision on several constitutional grounds, including the fifth amendment due process clause and the eighth amendment prohibition against excessive bail. Orta did not, however, raise her

constitutional arguments in the district court. Absent exceptional circumstances, we do not consider constitutional questions when unnecessary. *Dougherty v. White*, 689 F.2d 142, 144 (8th Cir.1982). Although we intimate neither approval nor disapproval of any specific decision, we note the constitutional issues surrounding the pretrial detention provision have received attention in many of the opinions examining the Bail Reform Act of 1984. *See, e.g., United States v. Kouyoumdjian*, 601 F.Supp. 1506 (C.D.Cal.1985); *United States v. Acevedo-Ramos*, 600 F.Supp. 501 (D.P.R.1984), *aff'd*, 755 F.2d 203 (1st Cir.1985); *United States v. Payden*, 598 F.Supp. 1388 (S.D.N.Y.1984); *cf. United States v. Edwards*, 430 A.2d 1321 (D.C.App.1981) (en banc), *cert. denied*, 455 U.S. 1022, 102 S.Ct. 1721, 72 L.Ed.2d 141 (1982) (discussing constitutional challenges to the District of Columbia

agree, and thus remanded this action to the district court for further consideration under the correct legal standard.

The Bail Reform Act of 1984, Pub.L. No. 98–473, tit. II, ch. I, 1984 U.S.Code Cong. & Ad.News (98 Stat.) 1976 (hereinafter cited as "the 1984 Act"), was a legislative response to growing public concern over increased crime and the perceived connection between crime and defendants released on bail. The legislative history explains that the 1984 Act:

> reflect[s] the Committee's determination that Federal bail laws must address the alarming problem of crimes committed by persons on release and must give the courts adequate authority to make release decisions that give appropriate recognition to the danger a person may pose to others if released. The adoption of these changes marks a significant departure from the basic philosophy of the [Superseded Bail Reform Act of 1966], which is that the sole purpose of bail laws must be to assure the appearance of the defendant at judicial proceedings.

S.Rep. No. 225, 98th Cong., 1st Sess. 3, *reprinted in* 1984 U.S.Code Cong. & Ad. News 3182 at 3185–3186.

The major differences between the superseded Bail Reform Act and the 1984 Act pretrial release provisions relevant to this case are the prohibition against using inordinately high financial conditions to detain defendants, and the authorization to consider in determining release conditions or detention the danger a defendant may pose to the community or certain individuals. The two changes eliminate the judicial practice of employing high bail to detain defendants considered dangerous and substitute a procedure allowing the judicial officer openly to consider the threat a defendant may pose. The passage of the pretrial detention provision of the 1984 Act did not, however, signal a congressional intent to incarcerate wholesale the category of accused persons awaiting trial. Rather, Congress was demonstrating its concern about "a small but identifiable group of particularly dangerous defendants as to whom neither the imposition [sic] of stringent release conditions nor the prospect of revocation of release can reasonably assure the safety of the community or other persons." S.Rep. No. 225, 98th Cong., 1st Sess. 6–7, *reprinted in* 1984 Code Cong. & Ad.News at 3189. The legislative history stresses that "[t]he decision to provide for pretrial detention is in no way a derogation of the importance of the defendant's interest in remaining at liberty prior to trial. * * * *It is anticipated that* [pretrial release] *will continue to be appropriate for the majority of Federal defendants." Id.,* at 7, 12 *reprinted in* 1984 U.S.Code Cong. & Ad.News at 3189 (emphasis added).

Consistent with the intent expressed in the legislative history, the statutory scheme of 18 U.S.C. § 3142 continues to favor release over pretrial detention. Section 3142 provides four alternatives from which the judicial officer must choose: (1) release on personal recognizance or unsecured appearance bond,[9] or (2) release subject to certain conditions,[10] or (3) temporary detention to permit, among other things, revocation of conditional release,[11] or (4) pretrial detention.[12] The judicial officer most often will be deciding between the first and the second alternatives. The statutorily mandated progression from one choice to the next is critical: a judicial officer cannot determine that a detention hearing and the possible imposition of pretrial detention is appropriate merely by determining that release on personal recognizance will not "reasonably assure" the defendant's appearance at trial or "will endanger" the community. The judicial officer must also consider whether one of the codified conditions or any combination of

---

Code pretrial detention provision upon which 18 U.S.C. § 3142 was modeled).

**9.** *See* 18 U.S.C. § 3142(b).

**10.** *See* 18 U.S.C. § 3142(c).

**11.** *See* 18 U.S.C. § 3142(d).

**12.** *See* 18 U.S.C. § 3142(e).

the conditions [13] will "reasonably assure" the defendant's appearance and the safety of the community.[14] The wide range of restrictions available ensures, as Congress intended, that very few defendants will be subject to pretrial detention.

In Orta's case, the magistrate did not follow the statutory progression from release on personal recognizance to conditional release because the government moved upon Orta's arrest for an evidentiary hearing to consider the appropriateness of her release.[15] Although the hearing is designated a "detention hearing," the appellation is not completely accurate. The purpose of the hearing is to determine whether any of the release options available to defendants not immediately subject to a detention hearing will satisfy the statutory safety and appearance concerns.[16]

Only if the government [17] shows by clear and convincing evidence [18] that no release condition or set of conditions will *reasonably assure* the safety of the community and [19] by a preponderance of the evidence [20] that no condition or set of conditions under subsection (c) will *reasonably assure* the defendant's appearance can a defendant be detained before trial.

In this case, the district court erred in interpreting the "reasonably assure" standard set forth in the statute as a requirement that release conditions "guarantee" community safety and the defendant's appearance. Such an interpretation contradicts both the framework and the intent of the pretrial release and detention provision of the 1984 Act. Congress envisioned the pretrial detention of only a fraction of accused individuals awaiting trial. The dis-

---

**13.** *See* 18 U.S.C. § 3142(c)(2)(A)–(N).

**14.** The difference between the legal standard set forth in subsection (b) and that found in subsections (c), (e), (f), and (g) reemphasizes congressional intent to preserve the statutory bias favoring pretrial release for most defendants. Subsection (b) directs release unless release "will not reasonably assure" the defendant's appearance, or "will endanger" the community's safety. 18 U.S.C. § 3142(b). Although the judicial officer may impose further restrictions upon a finding that the legal standard for either the flight or the danger concern is not met, a determination that a defendant's release *"will* endanger" the community will be rare. In contrast, subsections (c), (e), (f), and (g) change the legal standard to require release if any set of conditions "will reasonably assure the appearance of the person as required and the safety of any other person and the community * * *." 18 U.S.C. § 3142(c), (e), (f), (g). The change from the negative to the positive in the flight determination standard and from "will" to "will reasonably assure" in the dangerousness evaluation criterion renders it more difficult to find the defendant a flight and safety risk.

**15.** *See* 18 U.S.C. § 3142(f)(2). The government is empowered to move for a detention hearing under limited circumstances. *See* 18 U.S.C. § 3142(f)(1)(2). In this case, the government's motion was made pursuant to section 3142(f)(2).

**16.** *See* 18 U.S.C. § 3142(f), (c).

**17.** Orta's indictment and charge were based on provisions of United States Code Title 21 which

give rise, upon the judicial officer's finding of probable cause, to a rebuttable presumption that no condition or combination of conditions will reasonably assure the defendant's appearance and the safety of the community. *See* 18 U.S.C. § 3142(e). We strongly encourage the finding of probable cause and the defendant's successful or failed rebuttal of the statutory presumptions be expressly discussed in cases applying section 3142(e). Further, although we do not decide the question in this case, we note the majority of cases thus far addressing the issue have held that the presumption shifts only the burden of production to the defendant; the burden of persuasion remains with the government. *See, e.g., United States v. Payden,* 598 F.Supp. 1388, 1397 (S.D.N.Y.1984).

**18.** *See* 18 U.S.C. § 3142(f).

**19.** We do not decide today whether section 3142(e) requires the judicial officer to find that the defendant presents both a flight risk and a safety risk before she or he can be detained or whether the judicial officer can impose detention upon a finding of either flight or safety risk. *Cf. United States v. Kouyoumdjian,* 601 F.Supp. at 1508–10 (concluding the judicial officer can detain a defendant upon finding either flight or safety risk).

**20.** The statute does not expressly state the appropriate evidentiary standard necessary to support a finding of propensity for flight, indicating the preponderance of evidence standard usually applied in pretrial proceedings is appropriate. *See United States v. Freitas,* 602 F.Supp. 1283 (N.D.Cal.1985).

trict court's interpretation, however, virtually mandates the detention of almost every pretrial defendant: no other safeguard can "guarantee" the avoidance of the statutory concerns.[21] Further, the burden on the government in most cases to show a defendant's dangerousness and flight propensity would be lessened considerably if the government need only show by clear and convincing evidence that no release condition could "guarantee" the community's safety and by a preponderance of the evidence that no condition could "guarantee" a defendant's appearance. The structure of the statute mandates every form of release be considered before detention may be imposed. That structure cannot be altered by building a "guarantee" requirement atop the legal criterion erected to evaluate release conditions in individual cases.

We do not believe the "reasonably assure" standard is an unduly difficult one to apply. The judicial officer cannot require more than an objectively reasonable assurance of community safety and the defendant's appearance at trial. This legal test ensures that, as in Storie Lynn Orta's case, defendants who can be released pending trial will be released.

We hold in this supplemental opinion the district court erred in its interpretation of the pretrial release and detention provisions of the Bail Reform Act of 1984. We thus have remanded this action for further consideration.[22]

It is so ordered.

---

**21.** We note also the passage of the Pretrial Services Act of 1982, 18 U.S.C. §§ 3152–55 (1982), only two years before the 1984 Act. The Pretrial Services Act was intended to reduce both pretrial crime and the number of defendants detained unnecessarily while awaiting trial through programs increasing pretrial release supervision and services. *See* S.Rep. No. 77, 97th Cong., 1st Sess. 1, *reprinted in* 1982 U.S.Code Cong. & Ad.News 2377.

**22.** We are informed that on remand the district court directed the magistrate to conduct a further supplemental hearing and file a report and recommendation with the district court. On January 30, 1985, the magistrate filed his report

JOHN R. GIBSON, Circuit Judge, with whom ROSS and FAGG, Circuit Judges, join, concurring in part, and dissenting.

The court today correctly analyzes the provisions of 18 U.S.C. § 3142 and further correctly holds that the district court improperly required a "guarantee" which is beyond the language of the statute.

The evidence before the magistrate, however, was sufficient to sustain the findings that had earlier been made that no condition for release would protect both the public at large and any cooperating individuals from retaliation or intimidation. Accordingly, I would affirm the order of the district court denying pretrial release.

While appellant's condition calls for concern and even sympathy as she was five months pregnant when arrested, the district court did not err in determining that she posed a potential danger to the community. The court in footnote 7 sets forth a number of facts in the record. The magistrate found a number of other facts that are of extreme significance. Not only was appellant carrying a loaded gun in her purse when she was arrested but another loaded revolver, a loaded shotgun, and yet another revolver were seized when she and her husband were arrested. There was evidence that she was sitting on one of the weapons when arrested. The magistrate found that Mrs. Orta and her husband were engaged in an armed confrontation with a person in another vehicle, although no weapons were fired. A loaded revolver belonging to Mrs. Orta was later found in their vehicle. The magistrate found that

and recommendation describing conditions of release necessary to reasonably assure Orta would appear in court and would not endanger the community or particular individuals. The district court accepted the magistrate's report on February 7, 1985. On February 8, 1985, Orta agreed to comply with all the release conditions, but was unable to meet the financial security bond requirement. Because the Bail Reform Act of 1984 prohibits pretrial detention on the sole basis of an inability to satisfy a financial condition of release, *see* 18 U.S.C. § 3142(c), Orta was released upon execution of an appearance bond.

the Ortas resided in a home from which some fifteen to twenty shots were fired, some of which penetrated the walls of the house next door. On that occasion two Uzi semi-automatic rifles, which had been purchased by Mrs. Orta, were seized from the Ortas' vehicle. On two occasions witnesses expressed fear of reprisal. The court acknowledges the finding that Mrs. Orta struck a woman in the head with a pistol. This evidence is sufficient to support the finding that Mrs. Orta had endangered the public at large by the use of firearms. While appellant was an expectant mother when arrested, the public is entitled to protection from pistol-carrying mothers-to-be who have in the past shown propensities to use weapons.

Because the order denying release was properly ruled by the district court before the remand that led to the utilization of the improper legal standard, I would affirm and deny release.

### Appendix

### § 3142. Release or detention of a defendant pending trial

(a) IN GENERAL.—Upon the appearance before a judicial officer of a person charged with an offense, the judicial officer shall issue an order that, pending trial, the person be—

(1) released on his personal recognizance or upon execution of an unsecured appearance bond, pursuant to the provisions of subsection (b);

(2) released on a condition or combination of conditions pursuant to the provisions of subsection (c);

(3) temporarily detained to permit revocation of conditional release, deportation, or exclusion pursuant to the provisions of subsection (d); or

(4) detained pursuant to the provisions of subsection (e).

(b) RELEASE ON PERSONAL RECOGNIZANCE OR UNSECURED APPEARANCE BOND.—The judicial officer shall order the pretrial release of the person on his personal recognizance, or upon execution of an unsecured appearance bond in an amount specified by the court, subject to the condition that the person not commit a Federal, State, or local crime during the period of his release, unless the judicial officer determines that such release will not reasonably assure the appearance of the person as required or will endanger the safety of any other person or the community.

(c) RELEASE ON CONDITIONS.—If the judicial officer determines that the release described in subsection (b) will not reasonably assure the appearance of the person as required or will endanger the safety of any other person or the community, he shall order the pretrial release of the person—

(1) subject to the condition that the person not commit a Federal, State, or local crime during the period of release; and

(2) subject to the least restrictive further condition, or combination of conditions, that he determines will reasonably assure the appearance of the person as required and the safety of any other person and the community, which may include the condition that the person—

(A) remain in the custody of a designated person, who agrees to supervise him and to report any violation of a release condition to the court, if the designated person is able reasonably to assure the judicial officer that the person will appear as required and will not pose a danger to the safety of any other person or the community;

(B) maintain employment, or, if unemployed, actively seek employment;

(C) maintain or commence an educational program;

(D) abide by specified restrictions on his personal associations, place of abode, or travel;

(E) avoid all contact with an alleged victim of the crime and with a potential witness who may testify concerning the offense;

(F) report on a regular basis to a designated law enforcement agency, pretrial services agency, or other agency;

(G) comply with a specified curfew;

(H) refrain from possessing a firearm, destructive device, or other dangerous weapon;

(I) refrain from excessive use of alcohol, or any use of a narcotic drug or other controlled substance, as defined in section 102 of the Controlled Substances Act (21 U.S.C. 802), without a prescription by a licensed medical practitioner;

(J) undergo available medical or psychiatric treatment, including treatment for drug or alcohol dependency, and remain in a specified institution if required for that purpose;

(K) execute an agreement to forfeit upon failing to appear as required, such designated property, including money, as is reasonably necessary to assure the appearance of the person as required, and post with the court such indicia of ownership of the property or such percentage of the money as the judicial officer may specify;

(L) execute a bail bond with solvent sureties in such amount as is reasonably necessary to assure the appearance of the person as required;

(M) return to custody for specified hours following release for employment, schooling, or other limited purposes; and

(N) satisfy any other condition that is reasonably necessary to assure the appearance of the person as required and to assure the safety of any other person and the community.

The judicial officer may not impose a financial condition that results in the pretrial detention of the person. The judicial officer may at any time amend his order to impose additional or different conditions of release.

(d) TEMPORARY DETENTION TO PERMIT REVOCATION OF CONDITIONAL RELEASE, DEPORTATION, OR EXCLUSION.—If the judicial officer determines that—

(1) the person—

(A) is, and was at the time the offense was committed, on—

(i) release pending trial for a felony under Federal, State, or local law;

(ii) release pending imposition or execution of sentence, appeal of sentence or conviction, or completion of sentence, for any offense under Federal, State, or local law; or

(iii) probation or parole for any offense under Federal, State, or local law; or

(B) is not a citizen of the United States or lawfully admitted for permanent residence, as defined in section 101(a)(20) of the Immigration and Nationality Act (8 U.S.C. 1101(a)(20)); and

(2) the person may flee or pose a danger or any other person or the community;

he shall order the detention of the person, for a period of not more than ten days, excluding Saturdays, Sundays, and holidays, and direct the attorney for the Government to notify the appropriate court, probation or parole official, or State or local law enforcement official, or the appropriate official of the Immigration and Naturalization Service. If the official fails or declines to take the person into custody during that period, the person shall be treated in accordance with the other provisions of this section, notwithstanding the applicability of other provisions of law governing release pending trial or deportation or exclusion proceedings. If temporary detention is sought under paragraph (1)(B), the person has the burden of proving to the court that he is a citizen of the United States or is lawfully admitted for permanent residence.

(e) DETENTION.—If, after a hearing pursuant to the provisions of subsection (f), the judicial officer finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community, he shall order the detention of the person prior to trial. In a case described in (f)(1), a rebuttable

presumption arises that no condition or combination of conditions will reasonably assure the safety of any other person and the community if the judge finds that—

(1) the person has been convicted of a Federal offense that is described in subsection (f)(1), or of a State or local offense that would have been an offense described in subsection (f)(1) if a circumstance giving rise to Federal jurisdiction had existed;

(2) the offense described in pararaph (1) was committed while the person was on release pending trial for a Federal, State, or local offense; and

(3) a period of not more than five years has elapsed since the date of conviction, or the release of the person from imprisonment, for the offense described in paragraph (1), whichever is later.

Subject to rebuttal by the person, it shall be presumed that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community if the judicial officer finds that there is probable cause to believe that the person committed an offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act (21 U.S.C. 801 et seq.), the Controlled Substances Import and Export Act (21 U.S.C. 951 et seq.), section 1 of the Act of September 15, 1980 (21 U.S.C. 955a), or an offense under section 924(c) of title 18 of the United States Code.

(f) DETENTION HEARING.—The judicial officer shall hold a hearing to determine whether any condition or combination of conditions set forth in subsection (c) will reasonably assure the appearance of the person as required and the safety of any other person and the community in a case—

(1) upon motion of the attorney for the Government, that involves—

(A) a crime of violence;

(B) an offense for which the maximum sentence is life imprisonment or death;

(C) an offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act (21 U.S.C. 801 et seq.), the Controlled Substances Import and Export Act (21 U.S.C. 951 et seq.), or section 1 of the Act of September 15, 1980 (21 U.S.C. 955a); or

(D) any felony committed after the person had been convicted of two or more prior offense described in subparagraphs (A) through (C), or two or more State or local offenses that would have been offenses decribed in subparagraphs (A) through (C) if a circumstance giving rise to Federal jurisdiction had existed; or

(2) Upon motion of the attorney for the Government or upon the judicial officer's own motion, that involves—

(A) a serious risk that the person will flee;

(B) a serious risk that the person will obstruct or attempt to obstruct justice, or threaten, injure, or intimidate, or attempt to threaten, injure, or intimidate, a prospective witness or juror.

The hearing shall be held immediately upon the person's first appearance before the judicial officer unless that person, or the attorney for the Government, seeks a continuance. Except for good cause, a continuance on motion of the person may not exceed five days, and a continuance on motion of the attorney for the Government may not exceed three days. During a continuance, the person shall be detained, and the judicial officer, on motion of the attorney for the Government or on his own motion, may order that, while in custody, a person who appears to be a narcotics addict receive a medical examination to determine whether he is an addict. At the hearing, the person has the right to be represented by counsel, and if he is financially unable to obtain adequate representation, to have counsel appointed for him. The person shall be afforded an opportunity to testify, to present witnesses on his own behalf, to cross-examine witnesses who appear at the hearing, and to present information by

proffer or otherwise. The rules concerning admissibility of evidence in criminal trials do not apply to the presentation and consideration of information at the hearing. The facts the judicial officer uses to support a finding pursuant to subsection (e) that no condition or combination of conditions will reasonably assure the safety of any other person and the community shall be supported by clear and convincing evidence. The person may be detained pending completion of the hearing.

(g) FACTORS TO BE CONSIDERED.—The judicial officer shall, in determining whether there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community, take into account the available information concerning—

(1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence or involves a narcotic drug;

(2) the weight of the evidence against the person;

(3) the history and characteristics of the person, including—

(A) his character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and

(B) whether, at the time of the current offense or arrest, he was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and

(4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release. In considering the conditions of release described in subsection (c)(2)(K) or (c)(2)(L), the judicial officer may upon his own motion, or shall upon the motion of the Government, conduct an inquiry into the source of the property to be designated for potential forfeiture or offered as collateral to secure a bond, and shall decline to accept the designation, or the use as collateral, of property that, because of its source, will not reasonably assure the appearance of the person as required.

(h) CONTENTS OF RELEASE ORDER.—In a release order issued pursuant to the provisions of subsection (b) or (c), the judicial officer shall—

(1) include a written statement that sets forth all the conditions to which the release is subject, in a manner sufficiently clear and specific to serve as a guide for the person's conduct; and

(2) advise the person of—

(A) the penalties for violating a condition of release, including the penalties for committing an offense while on pretrial release;

(B) the consequences of violating a condition of release, including the immediate issuance of a warrant for the person's arrest; and

(C) the provisions of sections 1503 of this title (relating to intimidation of witnesses, jurors, and officers of the court), 1510 (relating to obstruction of criminal investigations), 1512 (tampering with a witness, victim, or an informant), and 1513 (retaliating against a witness, victim, or an informant).

(i) CONTENTS OF DETENTION ORDER.—In a detention order issued pursuant to the provisions of subsection (e), the judicial officer shall—

(1) include written findings of fact and a written statement of the reasons for the detention;

(2) direct that the person be committed to the custody of the Attorney General for confinement in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal;

(3) direct that the person be afforded reasonable opportunity for private consultation with his counsel; and

(4) direct that, on order of a court of the United States or on request of an

attorney for the Government, the person in charge of the corrections facility in which the person is confined deliver the person to a United States marshal for the purpose of an appearance in connection with a court proceeding.

The judicial officer may, by subsequent order, permit the temporary release of the person, in the custody of a United States marshal or another appropriate person, to the extent that the judicial officer determines such release to be necessary for preparation of the person's defense or for another compelling reason.

(j) PRESUMPTION OF INNOCENCE.— Nothing in this section shall be construed as modifying or limiting the presumption of innocence.