**UNITED STATES of America**

v.

**Benjamin Matthew LOGAN.**

**No. CR–97–99.**

United States District Court,
D. Minnesota,
Fourth Division.

April 11, 1997.

Joseph Friedberg, Minneapolis, MN, for Benjamin Matthew Logan.

Michael W. Ward, U.S. Atty. Office, Minneapolis, MN, for U.S.

## ORDER

ROSENBAUM, District Judge.

The matter is before the Court for *de novo* review of a pretrial release determination. *See United States v. Maull,* 773 F.2d 1479, 1481–82 (8th Cir.1985). After review and a hearing conducted on April 10, 1997, the Court orders pretrial detention of the defendant, Benjamin Matthew Logan, pursuant to 18 U.S.C. § 3142.

The defendant was arrested on April 1, 1997, pursuant to indictment by the grand jury, on charges which include armed rob-bery affecting interstate commerce, illegally dealing in firearms without a license, transporting firearms across state lines, and participating in conspiracies relating to these offenses, pursuant to 18 U.S.C. §§ 371, 1951, 924(c), 922(j), and 922(a)(1)(A).

The defendant appeared before the Honorable Hugh W. Brenneman, United States Magistrate Judge, on April 3, 1997. The Magistrate termed the detention issue a "close question," but ordered defendant released on a personal recognizance bond. Thereafter, the Magistrate denied the government's motion for an emergency stay of his release Order, pending appeal before the undersigned United States District Judge. This Court entered an emergency Order staying the Magistrate's release Order pending hearing on the government's appeal. The emergency detention Order was continued to Tuesday, April 8, 1997, and further continued to Thursday, April 10, 1997, at the request of the defendant and his attorney, Joseph S. Friedberg.

At the April 10, 1997, hearing, the Court heard testimony from Special Agent James McGann of the United States Bureau of Alcohol, Tobacco, and Firearms ("BATF"). The defendant offered the testimony of the Honorable Benjamin Henry Logan, Jr., the defendant's father; Arthur Martinez, Esq., the defendant's former counsel; and from the defendant, himself.

The Court received exhibits from each party and was provided pretrial services reports from offices in the Western District of Michigan and the District of Minnesota. Michigan's office recommended release, and Minnesota's office recommended detention. This Court, on *de novo* review, finds it proper to detain the defendant based upon the risk of danger to the community, as provided by statute.

The Congress has delineated the standards that must be met for pretrial detention at 18 U.S.C. § 3142(g). In making the decision to detain or to release a defendant, a court may detain a defendant "[o]nly if the government shows by clear and convincing evidence that no release condition or set of conditions ... will reasonably assure the safety of the com-

munity...." *United States v. Orta,* 760 F.2d 887, 891 (8th Cir.1985).

■ The crimes with which the defendant has been charged constitute "crimes of violence." These charges give rise to a rebuttable presumption that there exist no combination of conditions which will reasonably assure the safety of any other person or the community. *See* 18 U.S.C. § 3142(e). The grand jury's indictment triggers this rebuttable presumption. *See United States v. Quartermaine,* 913 F.2d 910, 916 (11th Cir. 1990).

Having heard and considered the evidence, the Court is convinced the presumption of danger to the community is unrebutted. *C.f. U.S. v. Garcia,* 801 F.Supp. 258, 261 (S.D.Iowa 1992) (citing *United States v. Jessup,* 757 F.2d 378, 381 (1st Cir.1985)) (mere production of evidence by defendant does not defeat presumption in favor of detention). This Court finds the defendant is a present danger to the community. A brief history of the defendant and the case is required to show the nature and extent of the danger.

## I. *Defendant's History*

In 1990, defendant, then 17 years old, was prosecuted in Michigan for the crime of carrying a concealed weapon. The weapon in question was loaded. Under Michigan law, a 17 year old is an adult for criminal purposes. *See* Mich. Comp. Laws § 722.822(e) (1996). Defendant's 1990 criminal prosecution resulted in a sentence of 24 months' probation, pursuant to the "Holmes Youthful Trainee Act," Mich. Comp. Laws § 762.11 *et seq.*

For reasons not known to the Court, the defendant's probationary period ended on June 10, 1992, a period slightly less than the two years imposed.[1] Pursuant to Mich. Comp. Laws § 762.14, the successful expiration of a probationary period, such as that imposed on defendant, expunges the underlying felony. Therefore, the defendant does not have a felony record. This fact notwithstanding, the Court does not entirely disregard the prior gun-related charge in consid-

ering the defendant's possible danger to the community.

## A. *The Offense of State Prosecution*

On June 23, 1992, within the defendant's 24–month probationary period, but after his attenuated actual probation, a heinous crime took place in Minneapolis, Minnesota: two employees of Lloyd's Gun Shop were gunned down in cold blood and a number of weapons were stolen from the store. One of the employees, Timothy Foslien, was killed by a single gunshot which entered his head through his eye. His co-employee, Brian Maas, was wounded by two shots from the same gun which killed Foslien. His fatal wound, however, came from a bullet from another gun, a .380 caliber semi-automatic pistol. This bullet was fired into the back of Maas's head as he lay wounded on the floor.

On June 25, 1992, two days after this vicious double homicide, defendant and two other young males were apprehended in the city of Chicago, Illinois. While it is presently disputed whether the defendant had a gun in his trouser waistband when apprehended, there is no question that the car in which the three were riding contained 13 firearms. Four of the weapons were in the passenger compartment, with one of the weapons attributed to each of the three males. The fourth weapon in the passenger compartment was not attributed to a particular occupant. Nine more weapons were found in the trunk of the car. Of the 13 weapons, 7 had been taken from Lloyd's Gun Store during the double homicide/robbery. The weapon which was attributed to the defendant, a .40 caliber Glock semi-automatic pistol, was one of the guns stolen from Lloyd's Gun Shop.

Investigation conducted by Chicago and Minneapolis police and BATF revealed that two of the apprehended males, Zachary Roan and the defendant, had robbed Lloyd's Gun Shop. Within 24 hours of apprehension, and after investigative interrogation, Zachary Roan admitted killing Timothy Foslien and firing the first two shots which struck Brian Maas. Roan and others gave statements im-

---

1. While on probation, defendant was involved in a domestic disturbance which resulted in a plea of guilty to petty misdemeanor disturbing the peace. *See* Government Exhibit 11. The Court does not consider this event to be of any weight in its pretrial release determination.

plicating Benjamin Logan as the person who fired the third shot which killed Maas.

Based on this investigation, defendant Logan was tried and convicted in the State of Minnesota for the murder of the two gun store employees. The conviction was reversed on appeal for irregularities in jury selection. *See State v. Logan*, 535 N.W.2d 320 (Minn.1995). This reversal resulted in a retrial. At retrial, defendant raised a duress/coercion defense and was acquitted. The defendant denied firing the shot which killed Maas.

### B. *The Federal Charges*

The present prosecution involves a federal indictment which charges that defendant committed armed robbery, murder, and transportation of stolen weapons from Minnesota to Illinois. The Court certainly recognizes that these charges arise from the same series of events which culminated in the murder acquittal. This fact, however, does not dispose of the issue before the Court. *See U.S. v. Watts*, —— U.S. ——, ——, 117 S.Ct. 633, 638, 136 L.Ed.2d 554 (1997) (per curiam) (concerning use of acquitted conduct in sentencing).

### II. *Pretrial Detention*

■ The question before the Court is whether there are conditions of release which will reasonably assure the appearance of defendant and safety of the community, as defined by 18 U.S.C. § 3142(g). The Court considers this question in light of the rebuttable presumption of his danger to the community resulting from an indictment for violating 18 U.S.C. § 924(c) and charges which carry presumptive sentences in excess of 10 years' duration. On this evidence, the presumption stands unrebutted.

The evidence adduced at the pretrial detention hearing showed the defendant had been convicted of a felony crime involving a loaded weapon. Despite a most favorable disposition of this offense, less than two years later he accompanied another person to a gun store with the clear intention of robbing the store at gunpoint. The gun store had been cased in preparation for the robbery in the day or days before. The evidence indicated that on the way to the fatal event, Mr. Roan, while riding in the car driven by the defendant, checked the bullets in this gun. The defendant was, himself, carrying a loaded weapon.

While in the store, Mr. Logan admitted attempting to draw his weapon. He claimed he was hindered in drawing the weapon by strings in his pocket. He was, apparently, finally able to draw the weapon. It is now in dispute whether he or Mr. Roan used it to kill the previously-wounded Mr. Maas. Two days later, either bearing or near a loaded firearm, Mr. Logan was apprehended in the company of the person who committed at least one of the gunshop murders. He was in a car which bore seven weapons stolen in that fatal robbery. All of these events took place after defendant was given a chance to reform and redirect his life in light of the prior gun offense.

In rebuttal, defendant argues he maintained gainful employment during the 12 months since his acquittal on April 10, 1996, and that despite knowing the possible imposition of impending serious federal charges for considerable time, he has not fled. This evidence does not overcome the evidence of violence.

The Court bases its detention Order on the danger the defendant poses to the community, rather than on a possible risk of flight. If there had been a concern regarding risk of flight, and the Court does not consider there to be one, it would have been obviated by his father's testimony. Judge Logan offered to keep and maintain his son and promised to pledge his property as surety for his son's reappearance.

Based on the findings herein, the Court finds clear and convincing evidence that no condition or set of conditions of release can reasonably assure the safety of the community.

Accordingly, IT IS ORDERED that:

Defendant, Benjamin Matthew Logan, be detained pending trial on the charges in the indictment.